# EXHIBIT A

IN THE COUNTY COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
SMALL CLAIMS DIVISION

Brittany Anthony,

     *Plaintiff,*

     v.

Equifax Information Services, LLC,

     *Defendant.*

Case No: _____

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Brittany Anthony**, ("**Ms. Anthony**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Equifax Information Services, LLC** ("**Equifax**"), stating as follows:

## PRELIMINARY STATEMENT

1.     This is an action for damages not to exceed $8,000, exclusive of attorney's fees and cost, brought by Ms. Anthony against Equifax for violations of the **Fair Credit Reporting Act**, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2.     Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p and Section 34.01, Florida Statutes.

3.     Equifax is subject to the provisions of the FCRA and is subject to the jurisdiction of the Court pursuant to Section 48.193, Florida Statutes.

4.     Venue is proper in Polk County, Florida, pursuant to Section 47.051 Florida Statutes, because the acts complained of were committed and / or caused by the Defendant within Polk County.

## PARTIES

5.    **Ms. Anthony** is a natural person residing in Lakeland, Polk County, Florida.

6.    Ms. Anthony is a *Consumer* as defined by 15 U.S.C. § 1681a(c).

7.    **Equifax** is a Georgia corporation, with a primary business address of **1550 Peachtree Street NW, Atlanta, GA 30309**.

8.    Equifax is registered to conduct business as a foreign corporation in the State of Florida, where its Registered Agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.**

9.    Equifax is a nationwide *Consumer Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically the mail and internet.  As a CRA, Equifax is aware of its obligations under the FCRA.

## FACTUAL ALLEGATIONS

### Ms. Anthony's October 2024 Consumer Disclosure

10.    On or about October 2, 2024, Ms. Anthony requested a copy of her consumer credit disclosure from Equifax.

11.    Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Ms. Anthony's request, Equifax was required to "clearly and accurately" disclose all information in Ms. Anthony's file at the time of her request, with the limited exception that her Social Security number could be truncated upon request.

12.    Equifax provided an electronic copy of Ms. Anthony's *Consumer Disclosure* ("**Equifax's Disclosure**") to her at her home address in Lakeland, Florida.

## Equifax's Disclosure Was Not Complete, Clear, or Accurate

## Missing Original Creditors

13.    Despite a requirement to disclose all information in her credit file at the time of her request, Equifax's Disclosure omitted significant amounts of information contained in her credit file**.**

14.    Equifax's Disclosure indicated that Ms. Anthony's credit file contained five (5) accounts classified as "Other." **SEE PLAINTIFF'S EXHIBIT A.**

15.    Equifax's Disclosure stated: "Other accounts are those that are not already identified as Revolving, Mortgage, or Installment Accounts such as child support obligations or rental agreements." *Id.*

16.    The accounts appearing in the "Other" section were reported by Jefferson Capital, LLC ("**Jefferson**"), Credit Corp Solutions, Inc. ("**Credit Corp**"), ESUSU, and Real Page, Inc. ("**Real Page**").

17.    Jefferson and Credit Corp are *Debt Buyers* – companies whose primary purposes are the purchase and collection of debts which were originally owed to third parties.

18.    As Jefferson and Credit Corp do not lend to consumers, they are *never an Original Creditor*.

19.    Despite this, when disclosing the Jefferson and Credit Corp tradelines to Ms. Anthony, Equifax indicated that Jefferson and Credit Corp were the *Original Creditors* of the accounts, omitting any reference to the *Original Creditor.*

Page **3** of **17**

20.     Despite being required to provide a full and complete disclosure of the information contained within its records, per 15 U.S.C. § 1681g(a), under the "Account Details" section of the account, Equifax placed a notation, "Contact the creditor or lender if you have any questions about it." *Id.*

21.     Equifax thus shifted the burden of disclosure and inquiry away from itself, and onto Ms. Anthony.

### Missing Account Numbers

22.     Making matters even more confusing for Ms. Anthony, Equifax omitted the full account numbers relating to the Jefferson, Credit Corp, ESUSU and Real Page tradelines.

23.     On information and belief, each of these data furnishers reported the full account numbers belonging to their respective accounts to Equifax, and this information was contained within Equifax's file regarding Ms. Anthony at the time of her request.

24.     When Equifax produces and sells reports regarding Ms. Anthony to third parties, the full account numbers and name of the original creditors are included in its reports.

25.     The accuracy of Equifax's reports to third parties demonstrates its ability to comply with 15 U.S.C. § 1681g(a) as well as the contents of its files.

26.     Having a duty to disclose ***all of the information*** regarding the accounts in Ms. Anthony's file, Equifax breached its duty by failing to provide the account numbers and original creditors' name, as such information is necessary for a consumer to be able to research and evaluate the information contained in her credit file.

27.     Absent such information, a consumer is reduced to, at best, playing detective and, at worst, guessing as to whether the information in their report is accurate.

28.    Equifax's disclosure contains a section entitled "Collections," stating: "Collections are accounts with outstanding debt that have been placed by a creditor with a collection agency. Collections stay on your credit report for up to 7 years from the date the account first became past due. They generally have a negative impact on your credit score."

29.    Jefferson and Credit Corp are registered with the Florida Office of Financial Regulation as Consumer Collection Agencies.

30.    Thus, Equifax should have placed these tradelines under the "Collections" header of Ms. Anthony's Disclosure rather than the "Other" header.

31.    In addition to missing the full account numbers from the "Other Accounts," Equifax disclosed a significant number of accounts reported by other data furnishers without full account numbers.

32.    Under the heading *Revolving Accounts*, there are six (6) tradeline without full account numbers.

33.    Under the heading *Installment Accounts*, there are twenty-two (22) tradelines without full account numbers.

34.    On information and belief, all the aforementioned data furnishers reported full account numbers to Equifax, and this information was contained within Equifax's file on Ms. Anthony at the time of her request for her consumer disclosure.

35.    Due to widespread systemic problems, Equifax's automated systems omits all but the last two or four account numbers reported by data furnishers that have a reported current payment status of "charge off," in addition to many other types of accounts.

36.    Equifax knows of this error but, despite such knowledge, has yet to correct it.

37.     The failure to disclose full account numbers violates the FCRA's requirement that a CRA disclose all information contained in a consumer's credit file clearly and accurately. *See Washington v. Equifax*, Case No. 3:19-cv-00154 (M.D. Tenn. Jun. 12, 2019) ("The plain language of the FCRA requires that the consumer reporting agency shall clearly and accurately disclose to the consumer '[a]ll information in the consumer's file at the time of the request.' 15 U.S.C. § 1681g. In the absence of binding authority stating that a truncated account number is a clear and accurate disclosure, the Court finds that Plaintiff has stated a plausible claim for a violation of Section 609 of the FCRA.")

38.     The failure of an entity to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), holding "alleged injury to (plaintiff's) statutorily created right to truthful housing information" was a cognizable injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore "the Art. III requirement of injury in fact [was] satisfied.

39.     The lack of accurate, full account numbers caused Ms. Anthony great frustration and emotional distress when trying to understand her credit report and verify it against her own records.

40.     Further, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000), "it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear') disclosure of 'all information' in the file." **SEE PLAINTIFF'S EXHIBIT B.**

41.     Equifax's omission of the original creditor and full account numbers greatly decreases a consumer's ability to understand her consumer credit disclosure, identify the accounts, and compare those accounts with her own records.

42.     The *Credit Reporting Resource Guide*, published by the Consumer Data Industry Association ("**CDIA**"), a trade association representing the CRAs, including Equifax, states that:

> "**The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports**. Without the original creditor names, consumers may not know what the accounts represent." (**Emphasis original**.)

**SEE PLAINTIFF'S EXHIBIT C.**

43.     The *Credit Reporting Resource Guide* instructs debt collectors to "(r)eport the name of the company/creditor that originally opened the account for the consumer." *Id.*

44.     On information and belief, Jefferson and Credit Corp complied with the *Credit Reporting Resource Guide* and reported the names of the true original creditor of their reported accounts.

### Prevalence of Equifax's Account Number Errors

45.     On information and belief, Equifax's Disclosure to Ms. Anthony was generated using a template that extracts database information from a consumer's file and populates it into various pre-programmed fields on a consumer disclosure form.

46.     On information and belief, this same template is used virtually *every time* a consumer requests their file from Equifax through www.annualcreditreport.com.

47.     On information and belief, www.annualcreditreport.com is the location where the majority of consumers obtain their Equifax credit disclosure.

48.     Consumer disclosures retrieved through annualcreditreport.com all exhibit the same missing account number and missing original creditor name errors.

49.    Thus, *every* consumer with accounts appearing in the "Other" section of their disclosure who requested their disclosure from Equifax through www.annualcreditreport.com since the template's use began, received a consumer disclosure with the same errors as Ms. Anthony.

50.    Equifax's error has therefore likely affected thousands of consumers.

51.    Equifax has known of the flaws in its systems for years, but has done nothing to fix them, despite the large number of consumers affected. *See, e.g., Justin Purdy vs. Equifax Information Services LLC,* case 8:19-cv-00217, M.D. FL, Jan. 28, 2019.

52.    Equifax's knowing and repeated conduct warrants an award of ***punitive damages***.

53.    Equifax's failure to disclose all of the information in the consumer's credit file in free annual disclosures is an intentional violation of 15 U.S.C. § 1681g(a), motivated by the Defendant's desire to avoid costs and increase profits.

54.    Ms. Anthony has a right to a full and complete disclosure of the contents of her file upon demand, at least once a year and without charge, and that disclosure must be presented clearly and accurately. 15 U.S.C. § 1681j.

55.    Equifax's failure to accurately, fully, and clearly disclose the information within its files regarding Ms. Anthony deprived her of this right.

56.    Ms. Anthony has hired the undersigned law firm to represent her in this matter and has assigned to them her right to obtain reimbursement for her reasonable fees and costs.

### COUNT I
### VIOLATIONS OF THE FCRA

57.    Ms. Anthony adopts and incorporates paragraphs 1 - 57 as if fully stated herein.

58.    Equifax violated **15 U.S.C. § 1681g(a)(1)** when responding to Ms. Anthony's request for her consumer disclosure by failing to clearly and accurately disclose to Ms. Anthony,

a *Consumer*, all of the information in her file at the time of the request. Specifically, Equifax disclosed two (2) accounts reported by Jefferson and Credit Corp without disclosing the full account numbers or the names of the *Original Creditors* and thirty-one (31) accounts also without the full account numbers, even though full account numbers were reported by the data furnishers.

59.    Equifax knowingly provided inaccurate information in Ms. Anthony's disclosure, as it knew of these issues, which have been identified and disputed by other consumers for years.

60.    Equifax is therefore liable to Ms. Anthony, pursuant to 15 U.S.C. § 1681n, for the greater of her actual damages and statutory damages of up to $1,000 per violation, plus attorneys' fees and costs.

61.    Alternatively, Equifax's conduct was negligent, and Equifax is therefore liable to Ms. Anthony, pursuant to 15 U.S.C. § 1681o, for her actual damages, plus attorneys' fees and costs.

**WHEREFORE,** Ms. Anthony respectfully requests that the Honorable Court enter judgment against Equifax for:

a.    The greater of statutory damages of **$1,000** per incident and Ms. Anthony's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or Ms. Anthony's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

d.    Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Anthony demands a jury trial on all issues so triable.

Respectfully submitted on November 4, 2024, by:

**SERAPH LEGAL, P. A.**

/s/ *Bridget L. Scarangella*
Bridget L. Scarangella, Esq.
Florida Bar No.: 1022866
BScarangella@seraphlegal.com
2124 West Kennedy Boulevard, Suite A
Tampa, FL 33606
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*

**ATTACHED EXHIBIT LIST**

A.    Ms. Anthony's Equifax Consumer Disclosure, October 2, 2024, Excerpt – *Other Accounts.*
B.    FTC Opinion Letter.
C.    *Credit Reporting Resource Guide*, Original Creditor Name Excerpt.

**EXHIBIT A**
**Ms. Anthony's Equifax Consumer Disclosure, October 2, 2024**
**Excerpt – "Other" Account (redacted)**

## 5. Other Accounts

Other accounts are those that are not already identified as Revolving, Mortgage or Installment Accounts such as child support obligations or rental agreements.

### 5.1 JEFFERSON CAPITAL LLC (CLOSED)

**Summary**

Your debt-to-credit ratio represents the amount of credit you're using and generally makes up a percentage of your credit score. It's calculated by dividing an account's reported balance by its credit limit.

| Account Number | xxxxxx█ | Reported Balance | █ |
| --- | --- | --- | --- |
| Account Status | COLLECTION | Available Credit | |

**Account History**

The tables below show up to 24 months historical data. If a table is blank, this data was not provided to Equifax.

**Balance**

██████████████████████████████████

**Scheduled Payment**

2022
2023
2024

**Actual Payment**

2022
2023
2024

**Credit Limit**

**2024SC-011877-0000-LK          Received in Polk 11/04/2024 04:34 PM**

# EXHIBIT A
## Ms. Anthony's Equifax Consumer Disclosure, October 2, 2024
## Excerpt – "Other" Account (redacted)

5.2 CREDIT CORP SOLUTIONS INC (CLOSED)

**Summary**

Your debt-to-credit ratio represents the amount of credit you're using and generally makes up a percentage of your credit score. It's calculated by dividing an account's reported balance by its credit limit.

| | | | |
|---|---|---|---|
| Account Number | xxxxxxxxxxxx■ | Reported Balance | ■ |
| Account Status | COLLECTION | Available Credit | |

**Account History**

The tables below show up to 24 months historical data. If a table is blank, this data was not provided to Equifax.

Balance

Scheduled Payment

2022

2023

2024

Actual Payment

2022

2023

2024

Credit Limit

2022

2023

**2024SC-011877-0000-LK     Received in Polk 11/04/2024 04:34 PM**

# EXHIBIT A
## Ms. Anthony's Equifax Consumer Disclosure, October 2, 2024
## Excerpt – "Other" Account (redacted)

### 5.3 ESUSU

**Summary**

Your debt-to-credit ratio represents the amount of credit you're using and generally makes up a percentage of your credit score. It's calculated by dividing an account's reported balance by its credit limit.

| Account Number | xxxxxxxx ▇ | Reported Balance | ▇▇▇ |
|---|---|---|---|
| Account Status | PAYS_AS_AGREED | Available Credit | |

**Account History**

The tables below show up to 24 months historical data. If a table is blank, this data was not provided to Equifax.

Balance

Scheduled Payment

Actual Payment

Credit Limit

2022

2023

Page **13** of 17

# EXHIBIT A
## Ms. Anthony's Equifax Consumer Disclosure, October 2, 2024
## Excerpt – "Other" Account (redacted)

**5.4 ESUSU**

**Summary**

Your debt-to-credit ratio represents the amount of credit you're using and generally makes up a percentage of your credit score. It's calculated by dividing an account's reported balance by its credit limit.

| Account Number | xxxx█ | Reported Balance | █ |
|---|---|---|---|
| Account Status | PAYS_AS_AGREED | Available Credit | |

**Account History**

The tables below show up to 24 months historical data. If a table is blank, this data was not provided to Equifax.

Balance

Scheduled Payment

Actual Payment

Credit Limit

2022

2023

# EXHIBIT A
## Ms. Anthony's Equifax Consumer Disclosure, October 2, 2024
## Excerpt – "Other" Account (redacted)

**5.5 REALPAGE INC (CLOSED)**

**Summary**

Your debt-to-credit ratio represents the amount of credit you're using and generally makes up a percentage of your credit score. It's calculated by dividing an account's reported balance by its credit limit.

| | | | |
|---|---|---|---|
| **Account Number** | xxxxxx■ | **Reported Balance** | ■ |
| **Account Status** | PAYS_AS_AGREED | **Available Credit** | |

The tables below show up to 24 months historical data. If a table is blank, this data was not provided to Equifax.

**Payment History**

View up to 7 years of monthly payment history on this account. The numbers indicated in each month represent the number of days a payment was past due; the letters indicate other account events, such as bankruptcy or collections.

| ■ Paid on Time | 30 30 Days Past Due | 60 60 Days Past Due | 90 90 Days Past Due | 120 120 Days Past Due |
|---|---|---|---|---|
| 150 150 Days Past Due | 180 180 Days Past Due | V Voluntary Surrender | F Foreclosure | C Collection Account |
| CO Charge Off | B Included in Bankruptcy | R Repossession | TN Too New to Rate | ■ No Data Available |

**Account Details**

View detailed information about this account. Contact the creditor or lender if you have any questions about it.

| | | | |
|---|---|---|---|
| **High Credit** | | **Payment Responsibility** | UNDESIGNATED |
| **Credit Limit** | | **Account Type** | OTHER |
| **Terms Frequency** | | **Term Duration** | |
| **Balance** | | **Date Opened** | Feb 03, 2023 |
| **Amount Past Due** | | **Date Reported** | Jul 31, 2023 |
| **Actual Payment Amount** | | **Date of Last Payment** | Jun 2023 |
| **Date of Last Activity** | | **Scheduled Payment Amount** | |
| **Months Reviewed** | | **Delinquency First Reported** | |
| **Activity Designator** | PAID AND CLOSED | **Creditor Classification** | UNKNOWN |

*EQUIFAX*    BRITTNEY ANTHONY | Oct 02, 2024    Page 93 of 106

■ Other

Page **15** of 17

# EXHIBIT B
## FTC Opinion Letter

 **FEDERAL TRADE COMMISSION**

# Advisory Opinion to Darcy (06-30-00)

June 30, 2000

Denise A. Darcy, Esq
Asst. General Counsel
TRANS UNION
555 West Adams Street
Chicago, Illinois 60661

Dear Ms. Darcy:

This responds to your letter dated concerning whether the Fair Credit Reporting Act ("FCRA") allows Trans Union or another consumer reporting agency ("CRA"), for security purposes, to "truncate, scramble or mask the account number and social security number" when making file disclosures to consumers. You report that such a procedure has been recommended to you by a consumer who was recently the victim of account takeover fraud by a perpetrator who fraudulently procured the individual's Trans Union file by impersonating the consumer. You state: "While some creditors truncate or scramble the data before they supply it to us, not all do, therefore, many of the account numbers on our file are complete and accurate, and that is what we disclose to the consumer."

Section 609(a)(1) of the FCRA states that CRAs, including major credit bureaus such as Trans Union, "shall, upon request (by a consumer), clearly and accurately disclose to the consumer . . . *All information* in the consumer's file at the time of the request" (emphasis added). If the "information in the consumer's file at the time of the request" includes account and social security numbers, the provision thus normally requires that the CRA "clearly and accurately" include such items in its disclosure to consumers. However, because the trigger for a file disclosure is a "request" by a consumer, a CRA may allow consumers (such as the individual in your letter) to choose truncation or other security measures in their own file disclosure. In other words, although Section 609 provides consumers with a right to *all information* in the file, a CRA may provide a method for the consumer to ask for less than all information and then comply with that "request" when it makes the disclosure.

In sum, it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide "accurate" (and perhaps not "clear") disclosure of "all information" in the file. However, if a consumer's "request" for a file disclosure is framed so as to allow some items in the file to be abbreviated or revised in that fashion, a CRA making such a disclosure would comply with Section 609.

The opinions set forth in this informal staff letter are not binding on the Commission.

Sincerely yours,

Clarke W. Brinckerhoff

## EXHIBIT C
### *Credit Reporting Resource Guide*, Original Creditor Name Excerpt

## Field Definitions

**K1 Segment**
**Original Creditor Name**

The K1 Segment must be present each time the account is reported by collection agencies, debt buyers, check guarantee companies, student loan guaranty agencies, and the U.S. Department of Education. **The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports.** Without the original creditor names, consumers may not know what the accounts represent.

Some state laws and CDIA policy stipulate that the original client/creditor must be identified. Federal law stipulates that the name of the payee must be identified when reporting returned checks.

Only one occurrence of the K1 Segment can be appended to the Base Segment. If not applicable, do not report the K1 Segment.

| FIELD | FIELD NAME & DESCRIPTION | 366 and 426 FORMATS | | |
|---|---|---|---|---|
| | | Length | Position | Recording Technique |
| 1 | **Segment Identifier**<br>Contains a constant of **K1**. | 2 | 1-2 | AN |
| 2 | **Original Creditor Name**<br>The content of this field is dependent on the type of reporter.<br><br>Collection Agencies: Report the name of the company/creditor that originally opened the account for the consumer, even if the account had been turned over to multiple collection agencies.<br><br>Debt Buyers: Report the name of the company/creditor that originally opened the account for the consumer, even if the account had been sold multiple times to different debt buyers. Refer to the K2 Segment for "purchased from" information.<br><br>Companies Reporting Returned Checks: Report the name of the payee; i.e., name of company to which the check was written. Refer to Frequently Asked Question 16 for additional guidelines on reporting returned checks.<br><br>Student Loan Guarantors/U.S. Department of Education: Report the name of the original student loan lender.<br><br>One of the following three options should be used when reporting a creditor's name that would reveal sensitive information about the consumer:<br><br>1. Report the name of the institution, but do not include reference to the type of service. For example, use the hospital name without identifying that it was the psychiatric unit that provided care. If a hospital's name reveals sensitive information, abbreviate the name.<br><br>2. Use the corporate name if it is different from the commercial name of a mental institution or drug rehabilitation center.<br><br>3. Do not report the account if either of the above two options would not sufficiently protect the consumer's privacy.<br><br>**Note: Encoded information is not acceptable in this field.** | 30 | 3-32 | AN |

CREDIT REPORTING RESOURCE GUIDE ®                                              4-35
*Copyright 2011 © Consumer Data Industry Association*